HOMER MOORE, *Appellant*, v. FLORENCE STEVENS, *Appellee*.

Division B.

Opinion Filed December 19, 1925.

1. Covenants restraining the free use of real property, although not favored, will nevertheless be enforced by courts of equity where the intention of the parties is clear in their creation, and the restrictions and limitations are confined to a lawful purpose and within reasonable bounds, unless the rights created by such covenants have been relinquished or otherwise lost.

2. Covenants restraining the use of real property are strictly construed in favor of the free and unrestricted use of such property. Due regard must be had for the purpose contemplated, as well as the circumstances surrounding the transaction, but in construing such a covenant the controlling factor is the expressed intent of the parties. Intent unexpressed will be unavailing, and substantial ambiguity or doubt must be resolved, against the person claiming the right to enforce the covenants.

3. The use of a building as a vocal studio, where an average of from thirty-six to forty-five pupils per week are received and given singing lessons by the occupant of the premises, which lessons are given in half-hour instruction periods extending at intervals throughout the day and sometimes into the early evening, five days per week, consuming an average aggregate time of from three to four hours per day, and where vocal choruses are also sometimes trained, a substantial remuneration being charged by the occupant of the premises for his services as teacher, which remuneration is his principal source of livelihood, will be enjoined in an appropriate action as a violation of a covenant which provides that the lot upon which such building stands "is to be used for residence purposes only," even though the building be also occupied as his settled place of residence by the teacher who conducts the singing lessons.

An Appeal from the Circuit Court of Hillsborough County; F. M. Robles, Judge.

Affirmed.

*Mabry, Reaves & Carlton,* for the Appellant;

*Chas. F. Blake,* for the Appellee.

STRUM, J.—Appellant, Homer Moore, who was defendant below, is the owner of Lot One, of Block Two, of Lingerlong Subdivision, situate in the City of Tampa. Title to said lot is held by appellant subject to the following provisions contained in an antecedent conveyance in his claim of title and by reference made a part of the deed by which appellant acquired title:

"As part consideration for the purchase price of said property said party of the second part hereby covenants and agrees as follows:

That this conveyance is made by the parties of the first part and accepted by the party of the second part under an

agreement that the property hereby conveyed is to be used for residence purposes only; that only one residence shall be erected on each lot, and said residence shall face east and shall not cost less than $3000.00 but the owner of said lot may have the necessary servant and out-houses on the rear of said lot; that the building line of said lot shall not be twenty feet or more from the front of said lot; that no liquor or ardent spirits are to be sold upon said property; that said property shall never be rented, sold or otherwise disposed of to persons of African descent; that no use shall be made of said property or any part thereof that would constitute a nuisance or injure the value of any neighboring lot.''

Appellee, Florence Stevens, who was complainant below, is the owner of Lot Six, Block Two, of said subdivision, which lot is located near the lot owned by appellant. Appellee holds title to her lot subject to the same restrictive covenants above quoted, which covenants, or covenants of similar import, were included in many (if not all) of the deeds by which lots in said subdivision were conveyed by the owners of the subdivision to the original purchasers of lots therein.

Appellee, as complainant below, brought her bill of complaint against appellant, asserting that the latter was violating the restrictive covenants imposed upon his title to said Lot One by using a building erected by him upon said premises for the purpose of conducting a vocal studio to which numerous persons came from day to day to receive singing lessons under the teaching of appellant. The bill prayed that appellant be enjoined from further using said premises in the manner stated.

Appellant answered, in effect denying all material allegations of the bill, except ownership of the property, and claimed an estoppel against complainant by reason of the

acquiscnce of the latter in the continued breach by other lot owners of the covenant "that only one residence shall be erected on each lot," and further averring a waiver of all the covenants above quoted by reason of a general disregard and breach thereof, acquiesced in by complaniant and other lot owners.

Upon consideration of the pleadings and evidence the chancellor entered a final decree perpetually enjoining appellant from "appropriating or applying" the premises owned by the appellant "to the purposes of a vocal studio, or any simiar use, by whatever name called or known, and from all use or applicatoin of said lot, or the building thereon, or any portion of same, for any purpose whatsoever except that of 'residence purposes only,' and that in the ordinary common acceptation of that term." From that decree this appeal was taken.

The evidence discloses that appellant, by profession, is a teacher of vocal music and earns his living principally by following that avocation. In 1920, appellant erected a two-story house on his lot in Lingerlong Subdivision, the plans for which were drawn by himself. The house so built has two large rooms and a lavatory downstairs, four rooms and bath upstairs, and a porch upstairs and downstairs. The downstairs rooms are designated by appellant as a reception room and music room, the former about ten feet square, the latter about thirty-four feet long and twenty-three feet wide, ceiling of both rooms being twelve and one-half feet high. The entrance to the house is between the reception room and music room. There is no kitchen on the ground floor, but bath room and kitchen are located on the second floor. There is a porch out beyond the kitchen door on the second story, and stairs leading from said porch down into the yard on the outside of the house. The character of the other upstairs rooms is not clearly disclosed by the evidence,

though the inference therefrom is that they are perhaps bedrooms, nor does it appear whether or not there is a stairway inside the house. Appellant lives in the house with his wife. It is his usual place of residence. Besides using the lower floor for the purpose of giving vocal lessons, it is the only part of the house in which the appellant and his wife entertain any persons except their most intimate friends, it being the only part of the house adequate for social functions.

In this house appellant, as teacher, conducts singing lessons beginning on some days at about 7:15 o'clock A. M. and other days at 8:00 to 9:00 o'clock A. M., and continuing intermittently, through the day until about 8:00 o'clock P. M., when the lessons customarily cease. Sometimes students are taught between 8:00 P. M. and 9:15 P. M., though this is not the usual custom. Usually, appellant gives only individual lessons, but "at odd times" he trains choruses. One chorus was trained by him over a period of six to eight weeks, the lessons being given one night each week, ceasing about 9:15 P. M. On other nights, rehearsals were held in the building, being discontinued shortly before 10:00 o'clock P. M. Within the limits of time above stated, appellant was willing to instruct as many acceptable pupils as his health and strength would permit. He had given as many as twenty lessons per day, this, however, being unusual. The average number of pupils taught ranged from about forty-five a week, when the studio was originally opened, to about thirty-six a week, when the testimony in this suit was taken, the number of lessons decreasing because of prosecutions instituted against appellant in the municipal court of Tampa. Appellant teaches on each day of the week, except Sunday, lessons on Saturday, however, being infrequent and not ordinarily given. Each individual lesson extends over a period of one-half hour, and appellant

charges therefor the sum of $3.50. Appellant testified that he had taught singing lessons in Tampa and elsewhere for about forty years and that it was the custom in the City of Tampa and elsewhere for professional singing teachers to give lessons and conduct their classes in the home of the teacher.

The evidence does not sustain appellant's contention, advanced in his answer below, that appellee is estopped to insist upon an observance of the restrictive covenants, or that there has been a waiver thereof. Schadt v. Brill, 139 N. W. Rep. 878; 45 L. R. A. (N. S.) 726; Sayles v. Hall, 210 Mass. 281; 96 N. E. Rep. 712; 41 L. R. A. (N. S.) 625; Brown v. Huber, 88 N. E. Rep. 322; 28 L. R. A. (N. S.) 705; Lattimer v. Livermore, 72 N. Y. 174; Morrow v. Hassleman, 69 N. J. Eq. 617; 61 Atl. Rep. 369; Alderson v. Cutting, 163 Cal. 503; 126 Pac. Rep. 157. Neither do we find any harmful error in the rulings of the Chancellor upon the several objections interposed to the evidence.

The only substantive question presented for determination is whether or not the use by appellant of his premises in the manner described is a violation of the restrictive covenants hereinabove quoted.

The covenants here under consideration relate to the *use* to be made of the property rather than to the character of the building to be erected upon it (see Fortesque v. Carroll, 75 Atl. Rep. 523; Hoffman v. Parker, 86 Atl. 864; Kurtz v. Potter, 60 N. Y. Supp. 764, affirmed 60 N. E. 1114), but in this instance the character of the building erected by appellant, particularly its interior arrangement, is illuminating as an indication of the use for which it was constructed. Boyleston v. Holmes, 114 N. E. Rep. 522.

Covenants restraining the free use of real property, al-

though not favored, will nevertheless be enforced by courts of equity where the intention of the parties is clear in their creation, and the restrictions and limitations are confined to a lawful purpose and within reasonable bounds, unless the rights created by such covenants have been relinquished or otherwise lost. Such covenants are strictly construed in favor of the free and unrestricted use of real property, but effect will be given to the manifest intention of the parties as shown by the language of the entire instrument in which the covenant appears, when considered in connection with the circumstances surrounding the transaction. Due regard must be had for the purpose contemplated by the parties to the covenant, and words used must be given their ordinary, obvious meaning as commonly understood at the time the instrument containing the covenants was executed, unless they have acquired a peculiar meaning in the particular relation in which they appear, or in respect to the particular subject matter involved, or unless it clearly appears from the context that the parties intended to use them in a different sense. Mayes v. Hale, 82 Fla. 35; 89 South. Rep. 364; Kitching v. Brown, 180 N. Y. 414, 70 L. R. A. 742, 73 N. E. Rep. 241; Hutchinson v. Ulrich, 145 Ill. 336; 21 L. R. A. 391; 34 N. E. Rep. 556; Kenwood Land Co. v. Hancock Investment Co., 169 Mo. App. 715; 155 S. W. Rep. 861; Godfrey v. Hampton, 127 S. W. Rep. 626; Kitchen v. Hawley, 131 S. W. Rep. 142; Harris v. Roraback, 137 Mich. 292; 100 N. W. Rep. 391; Pearson v. Adams (Can.), 27 Ont. L. Rep. 87; Highland Realty Co. v. Groves, 113 S. W. Rep. 420; 18 C. J. 385. The expressed intent of the parties is the controlling factor. Intent unexpressed will be unavailing, and substantial ambiguity or doubt must be resolved against the person claiming the right to enforce the covenant. Easterbrook v. Hebrew Ladies' Orphan Society,.

85 Conn. 287; 82 Atl. Rep. 561; 41 L. R. A. (N. S.) 615; 18 C. J. 388.

The covenant under which appellee claims the right to injunctive relief is the one which provides that appellant's property "is to be used for residence purposes only." There is no ambiguity in the quoted expression, nor doubt as to its meaning, when considered in the light of the entire transaction in which it was used and its component words are accorded their ordinary, well understood meaning. The word "residence" is one of multiple meanings, but the context in which it is used in this instance clearly indicates its meaning to be a dwelling house where a person lives in settled abode. The word, in this instance, relates solely to the use or mode of occupancy to which the property may be put. The word "only" is a limiting term which qualifies the word with which it is grammatically connected. As here employed it is synonymous with the word "solely," or the equivalent of the phrase "and nothing else." It qualifies the phrase "to be used," with like effect as if the covenant had read that the property "is to be used only for residence purposes." When so employed and understood, it necessarily excludes all uses of the property other than for residence purposes, and the interposition of other negative terms specifically prohibiting the use of the property for business, mercantile or other similar purposes are unnecessary.

Appellant admittedly uses the premises in question for "residence purposes," but it is obvious from the evidence that he does not use the building thereon situate for residence purposes *only*. In design, the building differs essentiallytially from the usual residence or dwelling. In use, it appears to be about equally divided between business and a place of residence. Appellant contends that its use as a place of business is properly incidental to its use as a residence, but the distinctive arrangement of the ground

floor and its particular adaptability to the purposes of appellant's business or profession, as well as the unusual location of the kitchen on the second floor and the stairway on the outside of the building, strongly·indicate that it was designed with quite as much· regard for its usefulness as a music studio as for a place of residence, a view which finds amplé support in the use to which the building is actually put as disclosed by the evidence.

Instances are not lacking in which other courts have held or intimated that property restricted to use for residence purposes, so. long as it is in good faith used for such, may be also used to a minor extent for the transaction of some classes of business or the following of some professional pursuits so long ·as the latter use is in fact casual, infrequent or unobtrusive and results in neither appreciable damage to ·neighboring property nor inconvenience, annoyance or discomfort to neighboring ·residents. This view, however, further requires such additional use to be so reasonably incidental to the prescribed use and such a nominal or·inconsequential breach of·'the covenants as to be in substantial harmony with the purpose of the parties in the making of the covenants, and without material injury to the neighborhood. Dorr v. Harrahan, 101 Mass. 531; Smith v. Graham, 147 N. Y. Supp. 173, affirmed 112 N. E. Rep. 1076; Morrow v. Hasselman, 61 Atl. 369; Gallan v. Hussar, 158 N. Y. Supp. 895. And where the defendant claims that complainant will not be injured by the alleged breach of the covenant, the evidence must comprehensively and convincingly sustain that assertion. Lignot v. Jaekle, 65 Atl. Rep. 221; Goater v. Ely, 82 Atl. Rep. 610.

The appellant had notice of the restrictive covenants when he purchased his property. Morrow v. Hasselman, 61 Atl. Rep. 369. In its broadest aspect, the view just referred

to will not justify the use made by appellant of the premises in question. That use is neither casual, infrequent nor unobtrusive, nor is it so incidental to appellant's use of the premises as a residence as to have been reasonably within the contemplation of the parties to the covenant. Appellee is undisputed in her testimony that she purchased her lot and built her home in Lingerlong Subdivision in contemplation of the restrictive covenants and because she desired a home "away from the noise of business." The sounds which necessarily emanate from a vocal studio where a large number of pupils are taught—in this instance an average of from six to eight pupils per day, consuming an aggregate time of three to four hours, divided into one-half hour instruction periods distributed throughout the day and early evening, five to six days a week, in a residential neighborhood—can not be said to be without appreciable annoyance, inconvenience, or injury to complainant, a neighboring resident. Such use does not substantially harmonize with, but violates the obvious purpose of a covenant restricting the property to use for "residence purposes only." Highland Realty Co. v. Groves, 113 S. W. Rep. 420; Booth v. Knipe, 122 N. E. Rep. 202, reversing jurgment of Supreme Court, App. Div., 165 N. Y. Supp. 577, and affirming judgment of special term; Hyman v. Tash, 71 Atl. Rep. 742; Parker v. Nightengale (Mass.), 6 Allen 341; Smith v. Graham, 147 N. Y. Supp. 773; affirmed 112 N. E. Rep. 1076; Iselin v. Flynn, 154 N. Y. Supp. 133; Scott Co. 1. Roman Catholic Bishop, 163 Pac. Rep. 88; Dorr v. Harrahan, 101 Mass. 531.

In Tonnelle v. Hayes, 194 N. Y. Supp. 181, the Supreme Court of New York, App. Div., declined to enjoin the use as a vocal studio of a building situate within the limits of the so-called "Murray Hill" restrictions in New York City, but those restrictions were by no means as comprehensive or exacting as those now under consideration.

Decree affirmed.

BROWN, C. J., AND WHITFIELD concur.

ELLIS AND BUFORD, J. J., dissent.

ELLIS, J., Dissenting:

The covenant in the deed of conveyance, which is made the basis of the injunctive order in this case, is set forth in the majority opinion. It was contained in a deed from Tampa Land Company and H. C. Draper and Blanche Draper, his wife, to Mary E. J. Lester, dated November 1, 1919, who, with her husband, conveyed to Frank Bentley in September, 1921, and by him conveyed to Homer Moore in March, 1922. The last two deeds do not contain the covenant as recited in the deed first above mentioned but they do contain the following clause, which immediately follows the description of the property:

"It is understood and agreed by and between the parties hereto that this deed is made subject to the restrictions as to the use of said land as provided in deed bearing date November 1, 1919, to Mary E. J. Lester from Tampa Land Company, a corporation, and H. C. Draper and Blanche Draper, his wife, as said deed appears recorded in Deed Book 299 at page 365 of the Public Records of Hillsborough County, Florida."

The lot described was Lot one (1), block two (2) of Lingerlong Subdivision as per map thereof recorded in Plat Book 8, page 63, Public Records Hillsborough County, Florida.

In April, 1922, the appellee acquired by deed from Tampa Land Company and H. C. Draper and Blanche Draper, his wife, lot six (6) of block two (2) in the same subdivision. The deed contained the same covenant as set

forth in the majority opinion except that the residence which the owner might erect thereon should face *"west"* instead of *"east."*

A plat of Lingerlong Subdivision is attached to the bill as Exhibit "A." It is entitled "Lingerlong a resubdivision of blocks 2, 4, 5, 8, 9 and lots 1, 2, 6, 7, 8 of block 2, lots 1, 2, 5, 6, 7, 8 of block 6 of Fortuna Subdivision as recorded on page 17, Book 3, corrected plat, records of Hillsborough County."

This plat contains notice of no restrictions of any kind whatsoever applicable to the blocks or lots designated thereon.

Block two (2), indicated upon the plat contains in addition to the lots enumerated in the title, lots numbered 3, 4, 5, and two large unnumbered tracts apparently equivalent to the total area of five lots in that block. Running north and south through block two (2) is an alley fifteen feet wide extending from Inman Avenue on the north to Bristol Avenue on the south. Lot six (6) is an inside lot located upon the west side of the alley and fronting west on Packwood Avenue. Lot one (1) is a corner lot located upon the east side of the alley fronting east on Rome Avenue and north on Inman Avenue.

The bill alleges that the appellant, Moore, "before acquiring the fee simple title to said property from his immediate grantor, erected on said lot one (1) of block two (2) of said subdivision, a building in violation of the restrictive covenants contained in the deed from the said Tampa Land Company and H. C. Draper and Blanche Draper, his wife, subject to which he acquired and now holds said lot and is using said building and is intending to continue the use of the same in violation of the restrictive covenants under which he holds said property," etc.

It is alleged that the building so erected and main-

tained is not a residence within the meaning of the said restrictive covenants; that the use of said property for the purposes aforesaid constitutes a use of the property for other than residence purposes only, within the meaning of said restrictive covenants. That the erection and use of the building by the defendant as a vocal studio greatly depreciates the value of complainant's lot for the reason that no one would pay as much for her lot and the costly residence which she had erected thereon by reason of the fact that the defendant's building is designed, used and maintained as a vocal studio in violation of the covenants and restrictions aforesaid.

The prayer was that the defendant be required to remodel the building and that he be enjoined from using it as a vocal studio or as a building for a purpose other than residential, or for any other purpose in violation of the restrictive covenants.

The answer avers that on lots two and three of block two (2) three houses have been erected and are now used for residence purposes; that they are occupied by and constitute the homes of different families, and that the complainant has acquiesced in the breach of the restrictive covenant in that regard. That in conveyances of other lots "in subsequent deeds" in many instances the "restrictive covenants have been dropped" and have not been insisted upon by the purchasers but on the contrary that breach thereof has been acquiesced in generally.

The answer admits that the defendant, Moore, is a teacher of vocal music and gives about forty-five vocal lessons of thirty minutes each in his home each week. That it is customary to give such lessons in the home of the teacher except where such lessons are given in colleges and universities. The answer avers that the defendant and his wife use the first floor of the building for family purposes, often for

entertaining friends, and denies that it has any special design or construction to fit it for a vocal studio only.

Testimony was taken and the decree rendered was as follows:

"ORDERED, ADJUDGED and DECREED as follows: That the said defendant, Homer Moore, his agents, servants and employees be forever hereafter perpetually enjoined and they are hereby enjoined to desist and refrain from all use of the premises described in the bill of complaint, to-wit: Lot one (1) of block two (2) of Lingerlong Subdivision, as per plat thereof recorded in Plat Book 8, at page 63, in the office of the Clerk of the Circuit Court of Hillsborough County, Florida, or any portion of the same, and from appropriating or applying the same to the purposes of a vocal studio, or any similar use, by whatever name called or known, and from all use or application of said lot, or the buildings thereon, or any portion of the same for any purpose whatsoever except that of 'residence purposes only,' and that in the ordinary common acceptation of that term."

The evidence establishes the allegation of the bill that the defendant uses his house, occupied by him as a home for himself and wife, for purposes of a vocal studio in which he teaches vocal music to pupils who come there for that purpose and that he gives about forty-five lessons of thirty minutes each per week for which he charges a fee and that work constitutes the principal income to him from his labors. The evidence shows that it is customary for teachers of vocal music to give lessons in their homes.

The clause contained in the covenant "that the property hereby conveyed is to be used for residence purposes only" is the one which the decree holds has been violated.

To determine the accuracy of that decision it is necessary to ascertain the exact meaning of these words in the

connection in which they are used in order to ascertain the intention of the grantors and grantees named in the deeds conveying the lots in the resubdivision known as "Lingerlong," because it is the intention of the parties as expressed by the words contained in the covenant to which effect must be given if it is to be given any effect at all.

It has been said that perhaps no man has ever possessed a more acute and perfect intellect than that of Blaise Pascal. That his clearness of expression and perfection of reason were unexcelled. He said that the true method in reasoning which furnishes demonstrations of the highest excellence consists in observing two rules, viz.: Define all the terms and prove all the propositions. It is an elementary law of thought, a basic rule of correct reasoning, that the terms of a proposition should have a definite meaning both in intension and extension and that meaning shall be consistently held and recognized throughout the entire argument. If that rule is disregarded it is not possible to arrive certainly at a correct judgment.

I agree that the word "only" in the quoted phrase contained in the covenant qualifies the verb "to be used." so that it conveys the same meaning as if the phrase had been "is to be used only for residence purposes" or to be used for residence purposes and nothing else.

The word "purposes" requires some definition in the light of the covenant under consideration. The meaning of the word is: "That which a person sets before himself as an object to be attained"; the end or aim to be kept in view in any "plan," "design," "intention." See Webster's International Dictionary (1925 Ed.).

The phrase would have been complete if the word "purposes" had been omitted so that it would have read as follows: The property hereby conveyed is to be used for

residence only. The word "purposes" adds nothing to the meaning of the sentence. It is superfluous and confusing.

The word "residence" means: "The place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode." Webster's International Dictionary (Same Ed.).

To say that a residence is a place where one dwells in permanent abode is merely to say that a residence is a residence, for abode means residence. The word "permanent" has no place in the definition because one's residence or abode may be temporary. Therefore the phrase means: the property hereby conveyed is to be used only as a place where one lives or has his home or dwelling place, habitation or abode.

There is no allegation in the bill that the use of the home by the defendant as a vocal studio constitutes a nuisance; nor is the allegation that such use of the building "greatly annoys the residents of the vicinity in which the studio is located" established by any evidence in the case, but that such use especially annoys the complainant is shown by her own testimony. Nor is there any allegation in the bill that the house was erected for "business purposes."

Therefore, whether the use of the house as a vocal studio by the defendant constitutes a nuisance is a subject not related and has no bearing whatsoever upon the decree rendered, because as it is not in evidence that such use constitutes a nuisance the Chancellor could not have so considered it; such use not being *per se* a nuisance.

There is some evidence of a general nature that the value of a lot in a restricted subdivision would be "hurt," in the estimation of the witness, if upon a lot in close proximity a building should be erected "for business purposes from the

conduct of which business certain objectionable noises emanated at all times during the conduct of the business."

That evidence was erroneously admitted by the chancellor because it was so general in character and so inapplicable to the facts of this case and allegations of the bill as to be worthless for any specific purpose and misleading in a high degree in so far as it assumed that the house was built for business purposes and that the sounds emanating from it were objectionable noises.

The decree therefore cannot logically rest upon the consideration that the house was erected for business purposes or that the sounds emanating from it constituted an annoyance to people living in the vicinity or that the use to which the owner put it by teaching vocal music in it resulted in the depreciation of the value of property in the resubdivision or that such use constituted a nuisance.

It follows that the sole question presented by this record is whether the covenant contained in the words "The property hereby conveyed is to be used for residence purposes only" was violated by the defendant who taught vocal music for a consideration paid to him by his pupils in the house erected by him as a residence upon the property?

The rule is universally recognized and enforced in the courts that restrictive covenants limiting the use of property are to be strictly construed against the restriction and all doubts should be resolved in favor of the reasonable use of the property and against the restriction. This rule is founded upon the elementary principle that restrictions upon a lawful use of property are against common right. They should therefore be so clear that by the acceptance of the deed which declares them the purchaser may reasonably be deemed to have understood and acceded to them. See Newberry v. Barkalow, 75 N. J. Eq. 128, 71 Atl. Rep. 752; Fortesque v. Carroll, 76 N. J. Eq. 583, 75 Atl. Rep. 923;

Boylston v. Holmes, 276 Ill. 279, 114 N. E. Rep. 522; Curtis v. Rubin, 244 Ill. 88, 91 N. E. Rep. 84, 135 Am. St. Rep. 307; 22 Cyc. 866 (b).

The argument supporting the decree is: that the property could be used for residence only but the defendant used it also for teaching vocal music for a consideration, which is for a purpose other than "residence."

The argument is unsound because it is made to depend upon the greatly increased intensive meaning given by the court to the phrase "residence purposes only," in the above argument, is so greatly increased that it would preclude the extension of the term to the use of the property for any purpose whatsoever from which the owner derived a monetary or other valuable consideration.

Many instances of such use might be given but it would seem to be sufficient to mention one or two. An artist would be prohibited from fitting up a studio in his home for painting portraits or other paintings from Biblical or historical subjects for monetary consideration, or a sculptor from moulding his clay or chiseling his marble into statues, a chemist from experimenting in his laboratory, a lawyer from briefing his cases, a physician from writing prescriptions or treating persons who came to his house for treatment or a seamstress from sewing for hire. If the element of pay for the particular activity is the obnoxious feature it follows that any one engaged in any of the above named vocations would come within the restriction.

Now the teaching of vocal music for hire cannot be said, in reason, to be peculiarly within the restriction while other vocations, like those menitoned above, are not.

Therefore all severally would be within the restriction if the phrase "residence purposes" is given the extremely limited and restrictive meaning of a "dwelling house where a person lives in settled abode."

I am of the opinion that such a limited and narrow meaning in extension of the phrase could not have been in the minds of the parties, either those who laid out the subdivision or those who sold and purchased the lots, because such a meaning would defeat the very purpose of the restrictive covenant, which was to give additional value to the property as a residential district.

It is apparent that if the meaning in intension of the phrase "residence purposes only" is as limited as that given to it in the majority opinion the term could be applied to any use whatsoever the owner might make of his property so long as he lived and had his home or abode upon the place. Which would lead inevitably to a conclusion different from that reached. I think that the intention meaning of the words "used only for residence" should be increased so that when the term is sought to be applied or extended to a given situation or condition that it would include any use of the property as does not destroy its character as residence property or which does not constitute a nuisance or such use as does not of itself operate to depreciate the value of adjacent or other property in the subdivision. Such was evidently the meaning which the parties placed upon the phrase because the covenant contains the following clause: "That no use shall be made of said property or any part thereof that would constitute a nuisance or injure the value of any neighboring lot." If the majority opinion is correct in the definition of the phrase "residence purposes only" it follows that the above clause is intended as a further limitation of the meaning of that phrase and was intended to embrace such a use of the property for residence only as might become a nuisance or injure the value of neighboring lots.

Such a construction of the covenant would destroy its meaning or make it impossible of comprehension, for in

what way could use of property for residence purposes only become a nuisance or injure the value of neighboring lots? It seems reasonable that the latter clause of the covenant therefore was intended by the parties to extend the meaning of the clause relating to use for residence purposes.

To what extent the property may be used without destroying its character as residence property provided such use does not injure the value of other property, in each case must depend upon its own circumstances. No hard and fast definition, such as given in the majority opinion, can be given of the term ''residence'' which would not in many conceivable cases exclude a legitimate use of the property under the restrictive clause. The use must bring into existence some other fact which creates a nuisance or injures the value of other property in the resubdivision before the complainant may be said to be entitled to an injunction to restrain such use of the property.

Now there was no evidence that the defendant's use of the property was such as to create a nuisance or injure the value of neighboring lots, nor was there any evidence that his use of the house which he erected on the lot rendered the building any less a residence.

There is no language in the covenant requiring the use of the property to be ''without appreciable annoyance, inconvenience or injury'' to neighboring residents. To put such words into the covenant is to make a new and different contract for the parties.

It is not inconceivable that the use of a phonograph or radio set or the giving of dinner parties or dances or the use of the house for social gatherings or the meeting of church guilds might be an ''annoyance'' to some highly strung and supersensitive resident of the neighborhood, but such use of the house, while not necessarily a residence purpose, could not be said to be within the restriction.

I am therefore of the opinion that the decree should be reversed.

BUFORD, J., Dissenting:

I concur in the dissenting opinion by Mr. Justice ELLIS, but wish to add the following observations to what he has so ably stated:

The decree in this case is based entirely on the construction and meaning to be given to the language used in a restrictive covenant contained, either actually or by reference, in the conveyances under which the appellant holds title, which covenant is quoted in the majority opinion.

My view is that the proper and reasonable construction to be placed upon the language used in this covenant is that it means:

1st.   That only residences with needful servants' houses and outhouses shall be erected on the lot.

2nd.   That no residence costing less than $3,000.00 shall be so erected and not more than one residence shall be erected on the lot.   There is no other limitation upon the style, size or construction of the proposed residence.

3rd.   That the residence shall be located not less than twenty feet from the lot line (we assume this refers to the front line).

In so far as the record discloses each of these conditions have been fully complied with by the appellant.

There appears to have been no feature of his building the construction of which could have been prohibited by invoking the conditions of the covenant.

Then there is in the covenant a prohibition against the "use of the property conveyed" for certain purposes and in certain manners.

1st.   No liquor or ardent spirits shall be sold on the premises.

2nd. The property shall not be rented, sold or otherwise disposed of to persons of African descent.

3rd. That no use shall be made of the property which use shall constitute a nuisance (that is a use which shall constitute what is recognized in law as a nuisance).

4th. That no use shall be made of the property which will injure the value of any neighboring lot.

There is no proper showing in the record that the property conveyed or that the residence erected thereon has been used, rented, sold or conveyed in violation of either of these conditions.

The use of the residence as a place for conducting the teaching of music of all kinds is not unusual, but on the other hand is a common practice amongst all classes of people. The charm and refining influence of music is appreciated by every one. To hold the teaching of music to be a nuisance would be most absurd. This is the only use of the premises complained of. This use is entirely compatible with using the property for residence purposes.

I find no violation of the restrictive covenants.