## NORWOOD-NORLAND HOMEOWNERS ASSN, INC., et al. v DADE COUNTY, et al.

### Case No. 85-325-AP

Eleventh Judicial Circuit, Appellate Division, Dade County

August 18, 1986

### APPEARANCES OF COUNSEL

· **H. T. Smith, Long, Knox & Mays,** and **George F. Knox** for appellants.

**Robert A. Ginsburg,** Dade County Attorney, **Robert L. Krawcheck, Sparber, Shevin, Shapo, Heilbronner & Book, P.A., Robert L. Shevin,**

**Brian S. Dervishi, Rosenberg, Reisman & Glass, Donald S. Rosenberg,** and **Stephen H. Reisman** for appellees.

Before SALMON, ROBINSON, KORNBLUM, JJ.

## OPINION OF THE COURT

KORNBLUM, J.

This is an appeal pursuant to Section 33-316 of the Metropolitan Dade County Code and Rule 9.110 of the Florida Appellate Rules from Resolution number Z-211-85 adopted by the County Commission on September 26, 1985, rezoning certain real property in Northwest Dade County, the site of the proposed Dolphin Stadium.

Appellants, homeowner's associations and individuals, urge that:

1. In rezoning the property the County Commission improperly departed from its Master Plan, adopted in 1983.

2. The County Commission wrongfully terminated a restrictive covenant, which had restricted the use of the subject property.

Appellees argue that since the first point was not raised in the proceedings before the County Commission, this court is without jurisdiction to hear it; furthermore, if the court has jurisdiction, the zoning resolution is fairly debatable and should not be disturbed.

On the second point appellees urge that all concerned parties were given an opportunity to be heard in regard to the termination of the restrictive covenant; that appellants made no objections nor suggestions regarding the manner in which the covenant should be terminated, and therefore, the County's method of termination should be conclusive. *State ex rel Szabo Food Services, Inc. v. Dickinson*, 286 So.2d 529 (Fla. 1983).

Appellees have filed a Motion to Strike appellants' first point arguing that this court has no jurisdiction. *The City of St. Petersburg v. St. Petersburg Yacht Club*, 352 So. 2d 119 (Fla. 2d DCA 1977). Appellees further seek to strike portions of the appellants' appendix claiming that certain exhibits were not before the County Commission, and that the court should not consider them.

Before proceeding on the merits, we must first consider the Motion to Strike. In connection with appellees' Motion to Strike that part of this appeal involving the alleged changes to the Master Plan, it is not clear on what basis the appellants charge that the County Commission improperly deviated from the Plan.

An examination of the record reveals that although their argument

**197**

was not labeled as such, appellants were complaining about placing the proposed development in an area designated for low to medium density residential development in the Master Plan. (R. 400, 549, 579). The same examination reveals that exhibits labeled A, F, G and H, of appellants' appendix were not actually part of the record.

For these reasons the Motion to Strike related to the deviation from the Master Plan is denied. The Motion to Strike the exhibits is granted.

In consideration of the merits the points will be addressed as follows:

1. Whether there was a deviation from the Master Plan, and if so, were the changes made according to law.

2. Whether the restrictive covenant was properly terminated.

The Master Plan reflects that some or all of the subject property is designated as a Sub-Metro Activities Center. (R. 457, 458, Appellants' Appendix I). Some of the uses consistent with this type of area are: shopping centers, general business districts, office parks, government centers, cultural or recreational complexes. (R. 458). The Master Plan and engineering and aerial photos show this property is bounded on the North by the Snake Creek Canal, on the West by Northwest 27th Avenue, also known in Broward County as University Drive, and on the East by Sunshine State Parkway. Subsequent to the construction of the homes which are appellants concern, Northwest 27th Avenue became a major thoroughfare, and a linkage for those commuting between the fast developing areas of West Broward and Dade County. The Calder Racing Complex, including a hotel is a short distance north of the proposed development and the turnpike just north of that. Much of the subject property had been zoned for residential use for many years before the stadium was proposed but remained undeveloped. For these reasons, the court concludes that rezoning the property for the construction of a sports stadium complex is not a deviation from the Master Plan.

Appellees argue that the focus of the court's attention should be the benefit of the proposed stadium complex to the community and the county, rather than the inconsistency of the zoning with the Master Plan. No doubt the project would create jobs and generate more revenue. Nevertheless, these benefits must be weighed against the obvious burden on appellants' community. (R. 417, 418, 419).

Appellants appear to be more concerned with the lack of sufficient parking, buffer areas, and the effects of support facilities, hotels, and offices, than with the stadium itself. (R. 559, 560, 561). Not unmindful of these real concerns the court must determine whether the zoning

198

changes are a reasonable and appropriate exercise of legislative power, and whether the zoning is fairly debatable.

The police power of a legislative body should have a reasonable relation to the public health, safety, morals, and welfare. Zoning is a legislative matter, and where the legislature determines that zoning is proper for an area, it is presumed to have a substantial relationship to the public welfare. *Dade County v. Intersiones Rafamar, S.A.*, 360 So.2d 1130 (Fla. 3d DCA 1978).

Absent a clear showing of unreasonableness or lack of substantial relationship to the public welfare, the courts should not disturb the resolution of a commission if it is fairly debatable. *City of Miami v. Schutte*, 262 So.2d 14 (Fla. 3d DCA 1972). The test to determine if a zoning resolution is fairly debatable, is whether reasonable minds could differ as to the outcome of a hearing. If so, the court should sustain the County Commission's resolution. *Dade County v. United Resources, Inc.*, 374 So.2d 1046 (Fla. 3d DCA 1979); *G.M. Davis v. Sails*, 318 So. 2d 214 (Fla. 1st DCA 1975). The burden is on the party challenging the resolution to show that the matter is not fairly debatable. *Dade County*, 374 So.2d at 1050; *G.M. Davis*, 318 So.2d at 226.

Although some of the plans for the facilities do not adequately address the concerns of the appellants the court should not substitute its judgment for that of the Commission's, made after a public hearing and with the benefit of professional planning recommendations. We must therefore conclude that the zoning resolution appealed from and the zoning itself is fairly debatable and should be upheld.

The appellants' second argument, regarding the cancellation of the restrictive covenant, is that the County made no valid determination that the restrictions had been cancelled by the required majority of the property owners and majority of property. Appellants also contend that if such a determination were made, it was erroneous.

The restrictions are contained in a "Covenant Governing Land Development" dated February 16, 1977, between the owners collectively referred to as the "Mortons", Janis Enterprises, Inc., the lessee developer and Metropolitan Dade County. The covenant was obviously required by the County as a condition for the rezoning of a portion of the property. After acknowledging certain deeds to the County and providing for other grants to the County and the School Board, the owner and developer agreed to restrict the development of the property to low and medium density housing, parks and schools. (Appellants' Appendix B.1). The covenant provides in part:

6. *Modification; Release:*

**199**

This Agreement may be modified, amended, or released as to any portion of the land described herein by a written instrument executed by the then-owner of the fee-simple title to the lands to be affected by such modification, amendment or release, along with a majority of the property owners within 350 ft. of the property for which such modification is proposed, as well as along with a majority of the property within 350 ft. of the property shown in the Plan, and approved after public hearing by Resolution of the Board of County Commissioners or Zoning Appeals Board of Metropolitan Dade County, Florida, whichever by law has jurisdiction over such subject matter.

(R.204).

Initially because of the 350 ft. requirement the appellees would have been required to obtain consents or releases from many of the homeowners in the subdivisions represented by the appellant associations. The appellees, realizing they might not be able to obtain such consents, amended their application to reduce the area subject to rezoning thereby excluding, owners who might object. The appellants complain that the gerrymandering was unfair and not made in the spirit or intent of the covenant. It is not controverted, however, the appellees had a right to change the application prior to the rezoning hearing.

The appellees then solicited consents from property owners within a distance of 350 ft. from the reduced area and obtained consents for cancellation of the covenant from 18 out of the total 55 individual owners or entities, including Dade County and the State of Florida, representing 111 out of 161 parcels. The County determined that the 18 owners and the 111 parcels represented both the majority of owners and the majority of property (119.4 out of 206 acres), considering that some of the 18 owners own more than one parcel and were therefore entitled to a consent for each parcel owned. (R. Vol. 1).

Appellants apparently argue that 28 out of the total 55 property owners within 350 ft. of the subject property would constitute a majority, not 18, and that neither the State of Florida nor Dade County should have been considered in the process. They ask this court to construe the release provision so as to require a majority of affected property owners to consent without regard to the number of separate parcels owned by each and not to count the votes of the County nor the State. Appellants have cited no authority for their position that public property owners should not have been considered as owners except to say that the covenant was intended to benefit private land owners.

200

The County Attorney determined that all property including that portion which had been legally platted was entitled to one vote for each parcel capable of being alienated. It appears to this court that the County was the covenantee; the release was ultimately in the hands of the County.

The construction given by the County in the zoning proceedings should be given great weight. *State ex rel Szabo Food Services, Inc. v. Dickinson*, 286 So.2d 529 (Fla. 1973); *Warnock v. Florida Hotel and Restaurant Commission*, 178 SO. 2d 917 (Fla. 3d DCA 1965). Nevertheless, appellants would have us adopt their construction arguing that it was obviously the intent of the parties to the covenant to protect the homeowners, since it would be unfair to them to construe it otherwise.

It may be as appellants suggest, but we cannot speculate that such was their intent. There is nothing in the record that compels such construction. There was no evidence of the objective intent of the parties to the covenant. It is just as likely and perhaps more so, that the developers, the parties to the covenant, intended to retain control until all the land was subdivided and sold.

The appellants have failed to meet their burden of showing that the County's construction was clearly erroneous.

Finally, addressing appellants' complaint that the proceedings and result were unfair and disturbing to an otherwise stable minority neighborhood. These may be matters to be argued in an appropriate action and forum, but not here.

Our only consideration, other than the release of the covenant, should be a determination of whether there was a reasonable relationship between the police power of the state and the resolution, and whether the zoning was fairly debatable. Rezoning for the purpose of constructing a sports stadium has been held to be related to the public welfare and a proper exercise of the state's police power. *City of Oakland v. Oakland Raiders*, 31 Cal. 3d 656, 646 P.2d 835 (1982); *New Jersey Sports & Exposition Auth. v. McCrane*, 61 N.J. 1, 292 A.2d 545 (1972).

Given the location of the property, the proximity to a major thoroughfare, the turnpike and the Calder Racing Complex, it cannot be said that the zoning is not fairly debatable.

Affirmed.

STEVEN D. ROBINSON, Judge (dissenting).

I respectfully dissent only to the decision of this Court upholding Dade County's full release of the restrictive covenant.

The covenant specifically states that modification, amendment or release requires "a written instrument executed by the then-owner of the fee simple title to the lands to be affected by such modification, amendment or release, along with a majority of the property owners within 350 feet of the property for which such modification is proposed, as well as along with a majority of the property within 350 feet of the property shown in the Plan, and approved after public hearing by Resolution of the Board of County Commissioners. . . ."

The County's approval was based on its interpretation that the term "a majority of property owners" would allow a lot owner of a subdivision to get a separate vote for each lot he or she owned. In other words, the fact that a lot was separably developable, entitled the owner to be counted as a separate property owner. This included allowing the State two votes for two separate roads it owned and the County nine votes for its separate parcels.

The often cited case of *Moore v. Stevens*, 90 Fla. 879, 106 So. 901 (1925), states the following principle to be followed in interpreting restrictive covenants.

Due regard must be had for the purpose contemplated by the parties to the covenant, and the words used must be given their ordinary, obvious meaning as commonly understood at the time the instrument containing the covenant was executed, unless they have acquired a peculiar meaning in the particular relation in which they appear, or in respect to the particular subject-matter involved, or unless it clearly appears from the context that the parties intended to use them in a different sense. . . . The expressed intent of the parties is the controlling factor. Intent unexpressed will be unavailing and substantial ambiguity or doubt must be resolved against the person claiming the right to enforce the covenant. 90 Fla. 879, 885.

"The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs." *Lalow v. Codomo*, 101 So.2d 390 (Fla. 1958); *United States Rubber Products v. Clark*, 145 Fla. 631, 200 So. 385 (1941). The principle "noscitur a sociis", it is known by the company it keeps, applies. *Dunham v. State*, 140 Fla. 754, 192 So. 324, 325, 326 (1939); 3 *Corbin on Contracts* § 552 (1960).

The Court here is asked to review an interpretation made by the County acting in a quasi-judicial capacity. The scope of that review is stated in *State ex rel. Williams v. Whitman*, 116 Fla. 196, 156 So. 705 (1934); 95 ALR 1416 (1933). The County interpreted a covenant relating to land and determined that it should be released. This was an

202

exercise of quasi-judicial power and allows the Court a right to review the interpretation at issue here without the deference required to be given to a County's interpretation of its own laws. 1 Am.Jur. 2d *Administrative Law* § 185 (1962). *See also if.* § 233-255 (administrative construction and interpretation of laws). *Whitman* dealt, as does this case, with decision the law and facts of an actual controversy bearing upon a vested legal right. 156 So. 705, 707. In this case the County terminated vested property rights by virtue of private and governmental neighbors' consents.

Applying these principles to this case, I conclude two points. The parties agreed that two separate conditions would be required to release the covenant: approval of a majority of the property and approval of a majority of the owners. " 'Owner' is not a term of art in a written real estate transaction, it can only mean one thing unless qualified in the writing itself." *Japanese Gardens Mobile Estates, Inc. v. Hunt,* 261 So. 2d 193, 196 (Fla. 2d DCA 1972). To give an owner more than one vote can only be done by interpreting the term "owner" outside of its ordinary or obvious meaning. Second, the possible ambiguity which allowed the County to interpret the covenant to its benefit (in accordance with its vote on its own property and in accordance with its vote on the rezoning regulation) is certainly not a substantial ambiguity in the light of there being two clauses, the reading of which together resolves the ambiguity of the clause in issue. The existence of two clauses makes the intention of the grantor certain.

For these reasons I would quash Zoning Resolution X-211-85 because of failure to properly release the restrictive covenant on the property.