839 So.2d 928 (2003)
Kenneth and Shelly WILSON, and Paul and Monica Vigna, Appellants,
v.
REX QUALITY CORPORATION, Appellee.
No. 2D02-1048.
District Court of Appeal of Florida, Second District.
March 26, 2003.
Robert A. Young of Gibson, Valenti & Ashley, Lake Wales, for Appellants.
Tanya M. Comparetto of Law Offices of Tanya M. Comparetto, P.A., Lakeland, for Appellee.
FULMER, Judge.
Kenneth and Shelly Wilson and Paul and Monica Vigna appeal the final judgment *929 entered in favor of Rex Quality Corporation (the Association) in which the trial court declared the Wilsons and the Vignas to be in violation of the Declaration of Restrictions governing the Crown Pointe Subdivision. Rex Quality Corporation is the name used by the homeowner's association and was the plaintiff below. For the reasons set forth in this opinion, we reverse.
The Wilsons and the Vignas are two families that moved into the Crown Pointe Subdivision in 1997. The underlying dispute centers on the Association's contention that the deed restrictions prohibit Mr. Wilson and Mr. Vigna from parking their company vehicles in the driveway of their residences. Mr. Wilson drives a Chevy Astro Van that bears, in several places, the words "Enjoy Coca Cola" painted in red. Mr. Vigna drives a Chevrolet S10 Pickup Truck bearing the words "Precision Termite and Pest Control" followed by "679-BUGS." The parties stipulated that the truck driven by Mr. Vigna was a "small pickup truck."
The restrictions at issue provide in part:
1. All lots shall be used only for single family residential purposes, and use of said lots shall be restricted and limited to conventionally constructed residential dwellings.
....
8. No sign of any kind shall be displayed to the public view on any lot, except one professional sign of not more than one (1) square foot, one sign of not more than five (5) square feet advertising the property for sale or rent, or signs used by a builder to advertise the property during the construction and sale period.
....
14. No noisy automobiles, trucks, motorcycles, dirt bikes or other similar type vehicles shall be permitted, and no commercial trucks (except small pickup trucks) shall be permitted.
....
18. No parking facilities shall be permitted on any lot, except a paved pad large enough to accommodate not more than two (2) automobiles. Private vehicles of a lot's occupants may be parked on the lot's driveway. No wheeled vehicle or boat shall be parked in the front or side yard of any lot.
No trailers or recreational vehicles shall be maintained or permitted on any lot, unless they are kept completely inside a garage attached to the residential dwelling, or approved by the Corporation pursuant to Paragraph three (3) above.
Beginning in March 2000, the Association sent letters to the Wilsons and Vignas advising them:
Article[1] 1 of the Declaration of Restrictions states that lots shall be used for residential purposes and Article 18 refers to private vehicles of the lot's occupants being parked in driveways. Article 14 prohibits commercial trucks and Article 8 prohibits signs of any kind except "for sale" signs relating to the property. By permitting a [Coca Cola/Precision Termite] commercial vehicle to be parked on your residential lot you are violating Article 1 not to mention 18. Furthermore you are not in compliance with Article 14 and 8.
In September 2000, the Association filed the underlying complaint seeking a declaratory judgment and specific performance of the restrictions. The complaint alleged *930 that the parking of a commercial truck at a residence within Crown Pointe was prohibited pursuant to paragraph 14 of the Declaration of Restrictions and that the parking of a commercial vehicle and the display of signage on any vehicle within Crown Pointe violated paragraphs 1, 8, and 18. In their answer to the complaint, the Wilsons and Vignas denied the Association's interpretation of these restrictions and raised the affirmative defenses of selective enforcement, waiver, and estoppel.
After a nonjury trial, the trial court entered a final judgment in which it acknowledged that "there may be conflicting interpretations of Paragraph fourteen (14)," but determined that as to the issues before the court, "there is no ambiguity in Paragraph eight (8) and such Paragraph controls." The judgment recites:
Pursuant to Paragraph eight (8), "no sign of any kind shall be displayed to the public view on any lot ..." and the only exception to that is the referenced For Sale signs.... If the sign is on a vehicle that is on the lot, it is a violation of the Declaration.
The judgment concludes with an order that the Wilsons and Vignas immediately come into compliance.
Restrictive covenants are not favored and are to be strictly construed in favor of the free and unrestricted use of real property. Moore v. Stevens, 90 Fla. 879, 106 So. 901, 903 (1925). "In construing restrictive covenants the question is primarily one of intention, and the fundamental rule is that the intention of the parties as shown by the agreement governs, being determined by a fair interpretation of the entire text of the covenant." Thompson v. Squibb, 183 So.2d 30, 32 (Fla. 2d DCA 1966). "Due regard must be had for the purpose contemplated by the parties to the covenant, and words used must be given their ordinary, obvious meaning as commonly understood at the time the instrument containing the covenants was executed." Moore, 106 So. at 903. Any doubt as to the meaning of the words used must be resolved against those seeking enforcement. Id. at 904.
With these rules in mind, we must review the restrictions and come to our own conclusion as to their proper interpretation. See Baldwin v. Nature's Hideaway, Phase I-B Homeowners Ass'n, 613 So.2d 1376 (Fla. 2d DCA 1993); Royal Oak Landing Homeowner's Ass'n v. Pelletier, 620 So.2d 786 (Fla. 4th DCA 1993). We first examine paragraph 8, which the trial court determined to be the controlling provision.[2] The prohibition in this paragraph addresses display of a sign "on any lot," not "on any lot or vehicle." Giving the words used their ordinary and obvious meaning, we conclude that paragraph 8 relates only to signs posted on the residents' lots and not to vehicles parked in the driveways. The trial court's interpretation not only ignores the expressly allowed professional signs but also prohibits certain vehicles that are expressly allowed by paragraph 14. Furthermore, such interpretation would exclude the temporary parking of service and repair vehicles as well as law enforcement vehicles.[3]
Having decided that paragraph 8 controlled, the trial court declined to resolve the conflicting interpretations of paragraph 14 advanced by the parties. We conclude that paragraph 14 is, in fact, the controlling provision. The Declaration of Restrictions contains twenty-one paragraphs. *931 Excluding paragraphs that relate to the creation and operation of the Association and the owners' liability for assessments, all of the paragraphs  save one  relate to the use of real property. Paragraph 14, which relates specifically to vehicles, distinguishes between automobiles, trucks, motorcycles, dirt bikes, commercial trucks and small pickup trucks. With respect to commercial vehicles, paragraph 14 provides that "no commercial trucks (except small pickup trucks) shall be permitted." This provision does not prohibit all "commercial vehicles." The plain meaning of the words reflects an intent to permit certain commercial vehicles. Neither the vehicle driven by Mr. Wilson nor the vehicle driven by Mr. Vigna is a commercial truck as that term is used in the Declaration of Restrictions.
Because we conclude that the trial court erred by finding the Wilsons and the Vignas to be in violation of the Declaration of Restrictions, we reverse the final judgment. Our reversal renders moot the remaining issues raised in this appeal.
Reversed.
KELLY, J., and GREEN, OLIVER L., Senior Judge, Concur.
NOTES
[1] The Association refers to the provisions of the Declaration as paragraphs and articles interchangeably.
[2] Contrary to the trial court's finding, paragraph 8 does not prohibit all signs with the exception of "For Sale" signs. One professional sign of not more than one square foot is permitted.
[3] Testimony at trial established that at least two residents regularly drove their law enforcement vehicles home without complaint from the other residents or the Association.