[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14317
Non-Argument Calendar

_____

D.C. Docket No. 0:15-cv-61446-BB

CIRCUITRONIX, LLC,
a Florida limited liability company,

Plaintiff - Counter Defendant - Appellant,

versus

SUNNY KAPOOR,
an individual,

Defendant - Third Party Plaintiff -
Counter Claimant - Appellee,

RISHI KUKREJA,

Defendant - Third Party Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 31, 2018)

Before NEWSOM, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Circuitronix, LLC appeals the district court's determination that its former employee, Sunny Kapoor, did not violate the terms of the non-compete agreement reached between the parties. Having concluded the district court did not clearly err in making the factual findings that underlie its judgment, we affirm.

**I**

Circuitronix is a company that manufactures and distributes various metal parts for several industries. The bulk of its business involves printed circuit boards (PCBs)—an essential component in almost all finished electronic products—and printed circuit board assembly (PCBA)—the process of assembling component parts to form PCBs. Kapoor served as the Assistant CEO of Circuitronix from October 2012 until his termination in March 2015. His employment was subject to a series of employment agreements. Following his termination, Circuitronix initiated the underlying suit alleging that Kapoor violated several of these agreements. Kapoor filed counterclaims against Circuitronix and its CEO Rishi

2

Kukreja, asserting claims of breach of employment contract, unlawful retaliation, civil theft, and unpaid wages.

The parties resolved the disputed claims in mediation and on December 1, 2015 signed a "Mediated Settlement Term Sheet."  As part of their agreement, Kapoor was required to disclose all business activities in which he was currently engaged that could potentially constitute violations of any of his employment contracts.  The Term Sheet also provided a "general release of all claims by the parties against one another" based on any conduct occurring "prior to and including the date [that the eventual Settlement Agreement] is executed."  Kapoor provided an affidavit disclosing his business activities on December 15, 2015, and the parties entered a final Settlement Agreement on the same day.  The Settlement Agreement incorporated the Mediated Settlement Term Sheet by reference and prohibited Kapoor from competing "with Circuitronix, anywhere in the world, for a period of 3 years starting from September 15, 2015."  The restriction explicitly applied "to all lines of business in which Circuitronix engaged" during the time of Kapoor's employment.  The Settlement Agreement was formally approved by the district court two days later.

Less than two weeks thereafter, Circuitronix filed its first motion for enforcement of the Settlement Agreement, in which it claimed Kapoor was competing directly with Circuitronix through his work for his father-in-law's

3

metal-parts company, Bawa Machine and Tool Manufacturing (BMTM). The motion was resolved when the parties filed a Joint Stipulation providing that Kapoor's work with his father-in-law did not involve certain identified metal parts and reiterating that Kapoor could not compete with "any line of Circuitronix's business."

A few months later, in April 2016, Kukreja discovered a website operated by Imaginasian Hong Kong, a company for which Kapoor remains the general manager and sole employee, which led Kukreja to believe that either Imaginasian Hong Kong or Imaginasian India—another company with which Kapoor was associated—was directly competing with Circuitronix. In particular, Kukreja believed that Imaginasian's product lines advertised as "Electronics" and "Mechanics" might run afoul of the restrictive covenants contained in the Settlement Agreement. Kukreja soon came to believe that Imaginasian was also competing with Circuitronix through BMTM and a separate company called Koala Holdings, LLC—a company owned by Kapoor's brother-in-law. In August 2016, Circuitronix mailed letters to the two companies notifying them of the existence of the Settlement Agreement and Kapoor's obligation not to compete with Circuitronix.

Kapoor filed a motion on September 9, 2016 arguing that the letters violated the Settlement Agreement's confidentiality and non-disparagement clauses and

requesting that he be granted limited discovery to determine if Circuitronix had sent any additional letters to third parties.[1] In response, Circuitronix filed a cross-motion, relying in large part on the Imaginasian website to allege that Kapoor was breaching the Settlement Agreement by directly competing with Circuitronix through Imaginasian, BMTM, and Koala Holdings.

The district court held an evidentiary hearing on December 8, 2016 to address the motions. Much of the hearing was dedicated to determining how the parties intended the term "line of business" to be interpreted, as it had been left undefined in the Settlement Agreement. The remainder of the hearing focused on the Imaginasian website, which Circuitronix argued clearly showed that Kapoor had been competing with its line of business. In particular, the website prominently displayed PCBs and PCBAs and advertised other metal parts and manufacturing processes that Circuitronix claimed overlapped with its metal business.

The district court ultimately issued an order on December 16 defining Circuitronix's "line of business" for purposes of the Settlement Agreement as follows:

> (1) printed circuit boards, including rigid, rigid-flex, flex and/or metal clad; (2) plastic injection molded parts, including single shot, multi shot, gas assist molding, foam molding, vertical molding,

---

[1] The district court determined that the letters did not violate the Settlement Agreement, and its decision in that respect has not been appealed.

overmolding, and insert molding; (3) compression and injection rubber parts, including silicone rubber keypads, gaskets, grommets, and elastomer strips; (4) metal parts, including stamped sheet metal parts, CNC sheet metal parts, die casting, extrusions, heatsinks, tool and die manufacturing for plastic injection molded parts, printed circuit boards, die casted parts, stamped parts, and cabinet locks; (5) printed circuit board assembly, including through hole, SMT, BGA, and COB; and (6) polymer thick film technology for different laminate substrates, including CEM-1, FR4, CEM-3, FR2 and ceramic.

The district court then allowed Circuitronix limited discovery going forward to determine if Kapoor breached the Settlement Agreement by competing with Circuitronix's now-defined line of business. The court separately held that Circuitronix would not be allowed to seek damages for any breach because of its failure to meaningfully comply with conferral requirements under S.D. Fla. Local Rule 7.1(a)(3) before filing its cross-motion.

The district court scheduled a final evidentiary hearing in order to fully resolve the issues before it. That hearing took place on April 24 and April 26, 2017 and focused on Kapoor's affiliation with Imaginasian India and a company called Ei EMS India Private Limited, an entity formed on September 29, 2016 as a joint venture and subsidiary of Imaginasian India and a company named EOS Power India Private Limited—a supplier of Imaginasian India whose work involves PCBs and PCBAs. Circuitronix claimed that Ei EMS competed with it by manufacturing PCBs and distributing them to Ei EMS customers. Kapoor argued that the PCBs manufactured at the Ei EMS site were made only to be used in

"power supplies"—a product used in virtually all electronic equipment and not included among Circuitronix's line of business—which it then sold to its customers.

As to the Imaginasian website, Kapoor testified that the references about the company's capabilities and services were mere "exaggerations" meant to obtain better pricing from suppliers for the products that it made for BMTM—which did not fall under the court's definition of Circuitronix's line of business—and that Imaginasian did not actually sell or attempt to sell any product in competition with Circuitronix.

The district court found, as a matter of fact, that Circuitronix had failed to show that it was more likely than not that Kapoor had violated the non-compete agreements contained in the Settlement Agreement. With regard to the website, the court found that the "puffery and falsehoods" displayed on the site, without more, were not sufficient to carry Circuitronix's burden. As for Kapoor's involvement with Ei EMS, the court found that Circuitronix had not produced any evidence showing that the company produced PCBs or PCBAs for any purpose other than their inclusion in power supplies, the sale of which did not constitute competition with Circuitronix, and that the manufacturing of PCBs and PCBAs alone was "not enough to establish a breach of the Settlement Agreement."

7

Circuitronix appealed, arguing (1) that the district court misinterpreted the word "compete," which Circuitronix argues by its plain meaning should include advertisements of the sort displayed on the Imaginasian website, and (2) that the court clearly erred in finding that Kapoor's involvement with Ei EMS did not violate the Settlement Agreement.  We address each issue in turn.

## II

## A

We review *de novo* the district court's interpretation of the word "compete." *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014).  When, as here, a term is left undefined, Florida law—which all parties agree applies here—requires us to give the term its ordinary meaning.  *See Id.* at 1022 (quoting Moore v. Stevens, 90 Fla. 879, 885 (1925)).  Circuitronix argues that the word "compete" is best defined as "[t]o strive consciously or unconsciously for an objective (as position, profit, or a prize): be in a state of rivalry."  A fair reading of the district court's order, however, demonstrates that the definition requested here by Circuitronix does not differ in any material way from the one used by the district court.  Indeed, the court seems to have applied the very definition requested by Circuitronix, and simply found, as a factual matter, that Circuitronix did not carry its burden of showing that it was more likely than not that the advertisements on the Imaginasian website constituted "striving" for the

8

sale of competitive products rather than mere puffery calculated to receive better pricing from suppliers of non-competitive products.  As the court interpreted the term "compete" correctly, we review its factual finding that the websites did not constitute improper competition for clear error, and will reverse only "if, after viewing all of the evidence, we are left with the definite and firm conviction that a mistake has been committed."  *Tartell v. S. Fla. Sinus and Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015) (internal quotation omitted).

Here, the district court's findings were not clearly erroneous.  Kapoor testified that the sole purpose of the advertisements on the website was to obtain better pricing from suppliers of non-competitive products.  Aside from the ads themselves, Circuitronix was unable to produce any evidence that Kapoor even attempted to sell any product in competition with Circuitronix's defined line of business.  In light of the evidence presented at the hearing, the court did not clearly err in finding that Circuitronix failed to show it more likely than not that Kapoor was competing with any of Circuitronix's defined lines of business.  We will not disturb the court's decision here.

## B

Circuitronix separately argues—albeit much more briefly—that the district court clearly erred in finding that Kapoor's involvement with Ei EMS did not breach the Settlement Agreement.  We disagree.  While Circuitronix demonstrated

that Ei EMS *manufactured* PCBs and PCBAs at its facility, it provided no evidence—which was required to prove a breach—that Ei EMS also *sold* PCBs or PCBAs as stand-alone products rather than as a component part of the power supplies it sold.  The court was free to credit Kapoor's explanation that the products were manufactured only for use in power supplies, a product that is not included in Circuitronix's line of business.  We cannot say the court clearly erred.[2]

The judgment of the district court is **AFFIRMED**.

---

[2] Circuitronix also appealed on the ground that the district court abused its discretion by refusing to allow it to seek money damages after it failed to comply with the conferral requirements of Local Rule 7.1(a)(3).  Having determined the district court did not clearly err in making the factual findings that underlay its determination that Kapoor did not breach the Settlement Agreement, we need not decide if the district court abused its discretion in limiting Circuitronix's remedies.