355 So.2d 222 (1978)
Donald A. BARRETT and H. Jean Barrett, His Wife, Flora A. Kirsheman, Theodore W. Kolz and Lois E. Kolz, His Wife, Sidney A. Stephens and Irene C. Stephens, His Wife, and James J. Wrasman and Winifred M. Wrasman, His Wife, Appellants,
v.
John F. LEIHER, Appellee.
No. 77-480.
District Court of Appeal of Florida, Second District.
February 24, 1978.
*223 Richard T. Bennison of MacKenzie, Castagna, Bennison & Gardner, Clearwater, for appellants.
No appearance for appellee.
BOARDMAN, Chief Judge.
Appellants/plaintiffs, Donald A. Barrett, H. Jean Barrett, Flora A. Kirsheman, Theodore W. Kolz, Lois E. Kolz, Sidney A. Stephens, Irene C. Stephens, James J. Wrasman, and Winifred M. Wrasman, appeal an adverse final judgment rendered in favor of appellee/defendant, John F. Leiher. We reverse.
Appellants filed suit against appellee to require him to remove from his premises a structure which appellants alleged violated a restrictive covenant running with the land. There is no dispute as to the facts involved. Appellants and appellee were residents of Pennwood Estates, a subdivision located in Pinellas County, Florida. By the declaration of restrictions duly recited and recorded October 6, 1967 in the public records, all lots of the subdivision were made subject to certain covenants which provided in pertinent part that:
1. All lots in this subdivision shall be known and described as residential lots. No structure shall be erected, altered, placed or permitted to remain on any residential lot other than one single family private dwelling with an attached garage for not less than two automobiles. No lot shall be reduced in size by any method whatsoever. Lots may be enlarged by consolidation with one or more adjoining lots under one ownership. In the event one or more lots are developed as a unit, all restrictions herein contained shall apply as to a single lot. In any event, no dwelling shall be erected, altered, placed or permitted to remain on any site smaller than one (1) lot as shown on the recorded plat.
2. No residence shall be erected upon any said lot which residence has less than 1650 square feet base building area exclusive *224 of garages, servants' quarters, or open porches, or other areas which are either open or enclosed solely by screens. For the purpose of measurements for compliance with this restriction, outside wall dimensions may be used.
3. Prior to start of construction, builders' plans must be approved by the developer, its duly authorized agent or assigns. All dwellings shall be of masonry type construction with cement tile roofs. All dwellings shall have a concrete driveway and a concrete sidewalk along the road right-of-way, an exterior post lantern, sodded front yard at completion of construction, according to the developer's specifications.
.....
7. Trailers, tents, shacks, barns or other temporary buildings of any design whatsoever, are expressly prohibited within this subdivision and no temporary residence shall be permitted in unfinished residential buildings. This shall not prevent temporary buildings used by contractors and developers in construction work, which shall be removed from the premises on completion of the building.
.....
10. Fencing will be permitted but to be no higher than 5 feet and not to extend beyond the front corner of the house and must comply with specifications of County of Pinellas for residential purposes.
.....
13. No clothes line shall be installed so as to be seen from the street in front of a residence. All garbage cans to have a decorative wall so they cannot be seen from the street in front of a residence.
.....
15. These covenants are to run with the land and shall be binding upon all parties and all persons who may now own or who may hereafter become the owner or owners of any of the above described lots and all parties claiming under them, for a period of 25 years from the date this instrument is recorded, after which time said covenants, reservations and restrictions shall automatically extend for successive periods of 10 years each, unless prior to the commencement of any 10 year period an instrument in writing, signed by the owners of a majority of the lots hereby affected, has been recorded in the Public Records of Pinellas County, Florida, which said instrument may agree to change, alter or rescind said covenants, reservations and restrictions, in whole or part. (Emphasis added.)
Appellee testified that at the time he purchased his property in 1974 that he was aware of the restrictions and that they had been attached to his title insurance policy.
This controversy arose between the parties when appellee began construction of a free-standing deck on his property. From the evidence introduced, particularly the picture of the deck, it is apparent that it is not attached to or connected to his residence. As described in the complaint it was approximately twelve to fourteen feet in height; a wooden deck suspended between the corner posts approximately eight feet above the ground level; a wooden railing approximately four feet high around the perimeter of the deck; a palm-frond thatching suspended from the railing; and a wooden stairway and hand rail running from the deck to the ground. It was located in appellee's back yard half way between the rear of his residence and the rear lot line.
After a hearing the trial court found that paragraph one of the restrictions which are the subject matter of this suit, do [sic] not contain a definition of the word "structure", and therefore said restrictions are ambiguous as to the intent of the requirements therein contained, and in the case of Ballinger v. Smith, 54 So.2d 433, the Florida Supreme Court in citing the cases of Moore v. Stevens [90 Fla. 879], 106 So. 901, and Heisler v. Marceau [95 Fla. 135], 116 So. 447, held that "the law favors the free and untrammeled use of real property. Restrictions in conveyances on the fee are regarded unfavorably and are, therefore, strictly construed, *225 but where the intention is clear, the Courts will enforce such restrictions if not unreasonable."
That it is evident from the evidence presented that a number of swimming pools have been constructed in the sub-division, [sic] and that infact [sic] the developer who promulgated said restrictions, constructed some of said swimming pools, and
Therefore, by the intent of the restrictions, not all structures are forbidden in that it appears that the primary purpose of the restrictions is to restrict the use of the property for single family use...
While we agree with the statement of law relied on by the trial court, as stated in the order appealed, we do not agree with its conclusion that the restrictive covenant at issue is ambiguous and unenforceable. Despite an acknowledgement by the courts of a predisposition against restrictive covenants, it is not necessary to specifically define each term within a covenant to draft an enforceable restriction.
Florida adheres to the general rule that a reasonable, unambiguous restriction will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of its terms. If it is necessary to construe a somewhat ambiguous term, the intent of the parties as to the evil sought to be avoided expressed by the covenants as a whole will be determinative. Only where intent cannot be ascertained will the covenant not be enforced. See Hagan v. Sabal Palms, Inc., 186 So.2d 302 (Fla.2d DCA 1966), citing Moore v. Stevens, 90 Fla. 879, 106 So. 901 (1925); 20 Am.Jur.2d Covenants, Conditions, and Restrictions §§ 185-87 (1965).
The plain meaning of "structure" is embodied in Webster's International Dictionary: "Something constructed or built... ." We can find nothing ambiguous in the use of this term in the case before us and conclude that the deck is a structure as ordinarily understood. Since paragraph one of the declaration unambiguously, expressly prohibits any structure other than one single-family dwelling with an attached garage on any one lot, appellee's deck is not a structure permitted under the declaration of restrictions and must be removed. Furthermore, not only is the term structure not ambiguous, but the intent of paragraph one is clear from the body of the declaration. It was the overall purpose of the restrictions to develop and maintain a residential area of some homogeneity in density, size, design, and materials of the structures and appearance of the lots. Paragraph one serves this purpose by restricting density and providing a uniform design and appearance.
REVERSED and REMANDED for proceedings consistent with this opinion.
GRIMES and DANAHY, JJ., concur.