505 So.2d 518 (1987)
EASTPOINTE PROPERTY OWNERS' ASSOCIATION, INC., Appellant,
v.
Sidney COHEN and Grace S. Cohen, His Wife, Appellees.
No. 4-86-0485.
District Court of Appeal of Florida, Fourth District.
March 25, 1987.
Rehearing Denied May 4, 1987.
Cory J. Ciklin of Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, West Palm Beach, for appellant.
Earl L. Maxwell, Jr., of Schneider Maxwell and Sullivan, P.A., West Palm Beach, for appellees.
DELL, Judge.
Appellants, Eastpointe Property Owners' Association, Inc., filed suit for an injunction to compel appellees to remove two exterior awnings from their single-family dwelling which is located in Eastpointe Country Club Subdivision.
Appellees belong to the Eastpointe Property Owners Association. The association has the responsibility to enforce the declaration of covenants and restrictions in the subdivision. In November, 1984, appellees contracted for the installation of two canvas awnings on the front of their residence. The awning contractor sent a copy of the blueprints along with a sample of the proposed fabric to the appellant's management firm. The plans show that the awnings are approximately thirteen feet four inches by two feet six inches and seven feet two inches by two feet six inches respectively, covered with green PG canvas on a frame constructed of schedule forty galvanized pipe. The management firm sent the plans to the president of the association. At the November meeting of the association the board submitted the plans to the Architectural Control Committee. On December 5, 1984, the awning contractor began installation of the awnings. While the work was being performed, the contractor was informed that the awnings could not be installed. On December 11, 1984 the Architectural Committee met and denied the application for installation of the awnings. The committee minutes reflect that "The committee resolved the application be turned down because the awnings would detract from the immediate surrounding environment."
Appellants brought suit against appellees seeking injunctive relief for the removal of the awnings claiming in part that the appellees installed them without approval from the architectural committee. Appellees argued that they did not need architectural approval for the awnings because the terms "improvement" and "structure," as used in the declaration of covenants and restrictions, were ambiguous. Appellees testified that they did not even know that the contractor had submitted the plans for architectural approval. The trial court agreed that the terms were ambiguous and entered final judgment denying appellant's prayer for injunctive relief. The trial court also stated in the final judgment: "The trial court has not reached and finds no *519 necessity to reach other issues raised in the proceedings by defendants in defense, including allegations of discrimination in enforcement, etc." For reasons which we will discuss later the trial court should have considered all of the issues and defenses raised[1] particularly the sufficiency of the evidence to support appellant's claim that the awnings were detrimental to the community.
On appeal appellant argues that the trial court erred when it found the words "improvements" and "structures" ambiguous as used in the declaration and restrictions of the Eastpointe Property Owners Association. Appellant also claims that the trial court failed to consider the manifest intention of the declaration of covenants and restrictions when it denied their request for an injunction. Finally they claim that the trial court erred when it awarded appellees attorneys fees and costs.
The declaration provides:
E. Type of Construction.
All dwellings on said lots shall be constructed in conformity with the building code of Palm Beach County, Florida or of such governmental authority as shall embrace the subject lots, whichever shall at the time be applicable. Materials used in construction must comply with the requirements of Palm Beach County and shall be subject to approval by the Architectural Control Committee. [emphasis added]
VI.
THE ARCHITECTURAL CONTROL COMMITTEE
A. General Powers.
All improvements constructed or placed on any lot must first have the written approval of the Committee. Such approval shall be granted only after written application has been made to the Committee in the manner and form prescribed by it. Approval may be withheld if, in the opinion of the majority of the members of the Committee, the proposed improvement detracts from the immediate surrounding environment in which it is proposed to be constructed.
J. "Improvements", means all buildings, streets, roads, roadways, driveways, parking areas, utilities, fences, retaining and other walls, hedges, poles, antennae and other structures of any type or kind [emphasis added]
In Barrett v. Leiher, 355 So.2d 222 (Fla. 2d DCA 1978), the district court stated:
Florida adheres to the general rule that a reasonable, unambiguous restriction will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of its terms. If it is necessary to construe a somewhat ambiguous term, the intent of the parties as to the evil sought to be avoided expressed by the covenants as a whole will be determinative. Only where intent cannot be ascertained will the covenant not be enforced... .
The plain meaning of "structure" is embodied in Webster's International Dictionary: "Something constructed or built... ."
Id. at 225 (citations omitted).
The trial court should have construed the terms "improvements" and "structures" in conjunction with the intent of the parties. The declaration demonstrates that it was the intent of the property owners association and its members to control structures in furtherance of "a general plan or scheme of improvement for the benefit of all of the residential property in the subdivision and the owners and future owners *520 thereof." The declaration states, "This declaration which is declared and agreed to be in furtherance of a plan for the development, improvement and sale of said property and is established and agreed upon for the purpose of enhancing and protecting value, desirability and attractiveness thereof ..." In Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA 1971), we said:
Daily in this state thousands of citizens are investing millions of dollars in condominium property. Chapter 711, F.S.A., 1967, the Florida Condominium Act, and the Articles or Declarations of Condominiums provided for thereunder ought to be construed strictly to assure these investors that what the buyer sees the buyer gets. Every man may justly consider his home his castle and himself as the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others. The benefits of condominium living and ownership demand no less. The individual ought not be permitted to disrupt the integrity of the common scheme through his desire for change, however laudable that change might be.
Id. at 688.
We believe the intent and purpose of the restriction is clear, and that the term "structure of any kind" when construed in conjunction with the language of the entire declaration, is not ambiguous as found by the trial court.
Regarding the trial court's conclusion that it did not have to reach the other issues raised, we believe those issues need to be addressed by the trial court. After review of the record, we note a question exists concerning the sufficiency of evidence to support appellant association's claim that the installation of the awnings would be detrimental to the community. In Hidden Harbour Estates v. Basso, 393 So.2d 637 (Fla. 4th DCA 1981), we said:
There are essentially two categories of cases in which a condominium association attempts to enforce rules of restrictive uses. The first category is that dealing with the validity of restrictions found in the declaration of condominium itself. The second category of cases involves the validity of rules promulgated by the association's board of directors or the refusal of the board of directors to allow a particular use when the board is invested with the power to grant or deny a particular use.
In the first category, the restrictions are clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed.
... .
The rule to be applied in the second category of cases, however, is different. In those cases where a use restriction is not mandated by the declaration of condominium per se, but is instead created by the board of directors of the condominium association, the rule of reasonableness comes into vogue. The requirement of "reasonableness" in these instances is designed to somewhat fetter the discretion of the board of directors. By imposing such a standard, the board is required to enact rules and make decisions that are reasonably related to the promotion of the health, happiness and peace of mind of the unit owners. In cases like the present one where the decision to allow a particular use is within the discretion of the board, the board must allow the use unless the use is demonstrably antagonistic to the legitimate objectives of the condominium association, i.e., the health, happiness and peace of mind of the individual unit owners.
Id. at 639-40.
Hidden Harbour held as a matter of law that the association had not presented sufficient evidence to support the three reasons alleged for denying a unit owner's application to drill a well. The record before us contains evidence indicating that the architectural committee denied the application because the installation of the awnings on the front of the house would *521 detract from the immediate surrounding environment. However, because the trial court did not reach this issue, or the issue of selective enforcement, a sufficient record is not before us and our review must end here. We hold that the trial court erred in not considering the question of whether the awnings were detrimental to the community and such other issues raised by the pleadings and arguments at trial. Therefore we reverse the final judgment denying appellant's prayer for injunctive relief and we remand this cause to the trial court for a new trial.
REVERSED and REMANDED.
WALDEN and STONE, JJ., concur.
NOTES
[1] Appellees raised selective enforcement as a defense in its unilateral pretrial conference statement and mentioned selective enforcement as an issue during opening argument. They also presented evidence at trial that included photographs of other residences in the village with awnings installed on the golf-course side of the homes, however, appellees presented no evidence of awnings installed on the front of any homes in the subdivision. After oral argument we granted appellees' request to supplement the record with the entire transcript of the proceedings in the trial court. The transcript shows that selective enforcement was mentioned but was not a major issue in the trial. Additionally, appellees did not raise the issue of selective enforcement by cross appeal so our review does not extend to this issue.