PER CURIAM.
This is an appeal from a final judgment for declaratory relief which determined that certain amendments to protective covenants and restrictions in the Holiday Pines Subdivision were unreasonable and thus invalid and unenforceable. We affirm in part and reverse in part.
Holiday Pines Subdivision was developed from 1978 through 1987 in St. Lucie County. Four separate plats were filed, hereinafter referred to as Plats I, II-A, II-B, and III. As each plat was filed, protective covenants and restrictions were also filed by the developer. Each set of covenants subjected the plat to the declaration of protective covenants, and the written document also provided that the developer could from time to time subject additional real property to the protective covenants. The covenants contained usual and customary restrictions regarding building on the lots and the uses to which the property could be put. The general purpose set forth in each of the recorded declarations stated:
The real property described in Clause I hereof is subjected to the protective covenants and restrictions hereby declared to insure the best use and the most appropriate development and improvement of each building site thereof; to protect the owners of building sites against such improper use of surrounding building sites as will depreciate the value of their property; to preserve, so far as practicable, the natural beauty of said property; to guard against the erection thereon of poorly designed or proportioned structures, and structures built of improper or unsuitable materials; to obtain harmonious color schemes; to encourage and secure the erection of attractive homes thereon, with appropriate locations thereof on building sites; to prevent haphazard and inharmonious improvement of building sites; to secure and maintain proper setbacks from streets, and adequate free spaces between structures; and in general to provide adequately for a high type and quality of improvement in said property and thereby to enhance the values of investments made by purchasers of building sites therein.
While the covenants provided that actions for enforcement of the covenants could be brought in circuit court in St. Lucie County, no formal mechanism for enforcement was contained in the declarations. Finally, *86 as to plats I and II-B, the covenants provided for amendment or modification by a two-thirds vote of the lot owners, but as to plats II-A and III the developer reserved to itself the right to make reasonable modifications or amendments until it no longer owned lots in the subdivision.
In 1983 some of the residents and the developer became concerned with the enforcement of the restrictive covenants and their refinement. They therefore wrote an amended set of restrictive covenants applicable to all of the plats. There were some substantive modifications of property restrictions (e.g. fencing materials, number of pets allowed).[1] However, the major changes were administrative. First, the 1983 amendment established an Architectural Review Board which was given the power to approve plans and specifications for improvements to lots. The purpose of the board was “to assure that the residences, customary appurtenances, and other improvements in the subdivision as a whole will preserve a uniformly high standard of construction that is attractive and harmonious.” To that end, the board was given the authority to withhold approval of plans not only for specific restriction violations but also if the board expressed a general dissatisfaction with materials, location of the structure on the lot, proportions, etc. The amendments provided for the formation of a homeowner’s association with recorded bylaws, including the right to make and amend regulations governing the use of property in the subdivision so long as such regulations were not in conflict with restrictions or limitations in the declarations of protective covenants. Finally, the procedure for amendment was changed to provide that until the developer sold all of its lots, it reserved the right to make reasonable modifications or restrictions to the covenants and restrictions.
These amendments were filed by the developer, and the testimony revealed that votes were also taken of the lot owners of the plats where lot owner approval of amendments was required. Two-thirds of the lot owners of those plats approved the amendments.
In 1987 the homeowner’s association again felt the need to enhance the enforcement of the covenants. To that end it proposed, and the developer agreed, to amend the covenants which changed some physical building requirements but substantially added to enforcement mechanisms of the covenants by making membership in the homeowner’s association mandatory, requiring the payment of dues to the association, allowing the collection of attorney’s fees by the association for enforcing covenant restrictions, providing for the association to perform maintenance on lot owner’s property, and allowing the creation and enforcement of liens against the lot owner’s property upon their failure to pay fees, dues or other charges or assessments. The amendments further provided for the amendment of the covenants by the vote of a simple majority of homeowners present in person or by proxy at a homeowner’s association.
It was after the recording of this last set of amendments that appellees filed suit for declaratory relief, contending that the developer did not have the authority to enact either the 1983 or the 1987 amendments. The trial court found that the developer reserved the right to make reasonable modifications to the protective covenants as to plats II-A and III but not as to the other two plats.- In addition, the court found that it was an unreasonable change in the development of each of the plats to impose mandatory membership in the homeowner’s association and to transfer the power to enforce the restrictive covenants to the homeowner’s association. Finally, the trial court held that it was an unreasonable change in the development plan to combine the four plats, determining that the amendments caused a fundamental change in the nature and extent of the individual lot own *87 ers’ control over his own lot. From this order, this appeal was taken.
In determining the enforceability of an amendment to restrictive covenants, the test is one of reasonableness. While traditionally a reservation of the right to amend restrictions would allow the grantor to change the entire character of a subdivision, the modern view is that a reserved power to modify restrictions must be exercised in a reasonable manner so as not to destroy the general plan of development. Nelle v. Loch Haven Homeowners Ass’n, Inc., 413 So.2d 28 (Fla.1982). Analyzing the amendments under this standard, we find that the 1983 amendments are valid and enforceable but that the 1987 amendments are not.
First, while the trial court was correct that the developer did not reserve the right to amend plats I and II-A, he overlooked the unrebutted testimony that these amendments were approved by two-thirds of the lot owners, as required by their amendment procedure. Therefore, procedurally the amendments were validly enacted. Second, the trial court considered the consolidation of the plats as unreasonable. However, each individual plat allowed for the inclusion of additional properties in the restrictions. Therefore, since it was within the contemplation of the grant- or and the grantee that additional properties could be added, we find it contrary to the documents themselves to determine that it is unreasonable that property was in fact added to the restrictions by amendment.
Under the 1983 amendments membership in the homeowner’s association was entirely voluntary. It could and apparently did act as an enforcing agency for the covenants, but that is not a fundamental change in the scheme of development, as the restrictive covenants always contemplated the ability to enforce their provisions. This was therefore merely an administrative or procedural change in the mechanism for enforcement of the covenants. Finally, although the trial court did not mention it, the establishment of the architectural review board by amendment was not a fundamental departure from the scheme of development. The stated purpose of the covenants was to provide for the very matters which the architectural review board is empowered to consider. Because the discretion of the architectural review board is as a matter of law also governed by the standard of reasonableness in its determinations, see Eastpointe Property Owners’ Ass’n, Inc. v. Cohen, 505 So.2d 518 (Fla. 4th DCA 1987), its creation by the covenants does not alter the scheme of the overall development and probably enhances it.
With respect to the 1987 amendments, we agree with the trial court that they create a fundamental change in the scheme of development. By creating a mandatory membership in a homeowner’s association having far ranging powers of enforcement, maintenance, and rule enactment, the restrictive covenants have in effect changed this subdivision to a quasi-condominium development. That difference is significant. A subdivision with restrictive covenants retains to the homeowner a degree of individual control over the owner’s property that is lost when man-datorily transferred to a homeowner’s association. This court stated in Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180, 181-82 (Fla. 4th DCA 1975):
It appears to us that inherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization.
Similarly, the mandatory nature of the homeowner’s association together with their increased powers of regulation, management, and liening authority, have significantly restricted the lot owner’s use *88 of his or her property. People elect not to purchase in condominiums because they do not want to restrict their control over their own property. This is not a continuation of a scheme of development but a radical change of plans, altering the relationship of lot owners to each other and the right of individual control over one’s own property. Thus, the trial court did not abuse its discretion in determining that the 1987 amendments were unreasonable and not consistent with the general scheme of development.
Therefore, we reverse the trial court’s order as to the 1983 amendments and determine that they are valid and enforceable, but we affirm that part of the trial court’s judgment declaring the 1987 amendments unenforceable.
DELL, STONE and WARNER, JJ., concur.

. While the appellees contended that some of these individual modifications were unreasonable, we will not address their contentions here as the trial court did not rule on these specific changes. Instead the trial court focused on the administrative changes made in the amendments.