752 So.2d 653 (2000)
IMPERIAL GOLF CLUB, INC., Appellant,
v.
Daniel R. MONACO and Ann D. Monaco, husband and wife, Appellees.
No. 2D98-4586.
District Court of Appeal of Florida, Second District.
January 14, 2000.
Rehearing Denied February 24, 2000.
Robert L. Donald of Law Office of Robert L. Donald, Fort Myers, for Appellant.
G. Gordon Harrison of Pavese, Garner, Haverfield, Dalton, Harrison & Jensen, LLP, Fort Myers, for Collier's Reserve Country Club, Inc., Fiddlesticks Country Club, Inc., The Forest Country Club, Inc., Foxfire Community Association, Inc., Kensington Golf & Country Club, Inc., Royal Palm Country Club of Naples, Inc., Royal Wood Golf & Country Club, Inc., Stonebrige Country Club Community Association, Inc., Worthington Master Association, Inc. and Wyndemere Country Club, Inc., Amicus Curiae. Sheryl A. Edwards of Sheryl A. Edwards, P.A., Sarasota, for Appellees.
WHATLEY, Judge.
Imperial Golf Club, Inc., appeals a final judgment entered in favor of Daniel and Ann Monaco. We affirm.
The Monacos purchased a lot on the Imperial Golf Course in the early 1980s and built a house. The Monacos' back lot line abuts the golf course and measures approximately 200 feet. The Monaco property is closest to the fifth tee. The fourth green is located on the other side of the fifth tee.
In July 1997, Imperial began construction of a structure providing restroom facilities and a shelter between the fifth tee and the fourth green. This structure replaced an older facility that had been in a different location. The new structure is approximately 81 feet from the Monaco property line and it measures 25 feet by 15 feet. Before the new structure, the Monacos had an unobstructed view of the fifth tee and the fourth green. Imperial concedes that the new structure obstructs the Monacos' view of the fourth green in substantial part.
The Monacos filed suit alleging that Imperial breached a restrictive covenant, because the new structure obstructs their *654 view of the golf course. The suit sought injunctive relief and, in the alternative, damages. The language of the restrictive covenant at issue provides the following:
That no fences, hedges, or other obstructions may be constructed around or near the boundaries of the lands set forth and described hereinabove, the purpose of this clause being at all times to permit complete visibility of the golf course and its appurtenances from the surrounding lands owned by WHISPERING PINES, INC., a Florida Corporation, its successors and assigns.
Imperial is a successor to Whispering Pines, Inc., and the covenant is recorded on Imperial's property.
The trial court found that Imperial violated the restrictive covenant, that injunctive relief would not be appropriate, and that damages were appropriate in the amount of $45,000.[1]
In its first point in this appeal, Imperial argues that the structure is not a fence, hedge, or other obstruction, as prohibited by the restrictive covenant. We do not find merit in this argument and affirm it without discussion.
In its second point, Imperial argues that the structure is not "around or near" the boundary of the Monaco property, and therefore, it does not violate the restrictive covenant. We disagree. Restrictive covenants will be enforced where their intent is clear and their restrictions are reasonable. See Bollinger v. Smith, 54 So.2d 433 (Fla.1951). We conclude the intent of the restrictive covenant is clear and reasonable. It specifically states that "the purpose of this clause being at all times to permit complete visibility of the golf course and its appurtenances from the surrounding lands." Because the new structure prevents the Monacos' complete visibility of the golf course, the structure violates the intent and purpose of the restrictive covenant. See Robins v. Walter, 670 So.2d 971, 974 (Fla. 1st DCA 1995) ("While we are aware that restrictive covenants should be narrowly construed, they should never be construed in a manner that would defeat the plain and obvious purpose and intent of the restriction.").
In Barrett v. Leiher, 355 So.2d 222, 225 (Fla. 2d DCA 1978), this court held:
Florida adheres to the general rule that a reasonable, unambiguous restriction will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of its terms. If it is necessary to construe a somewhat ambiguous term, the intent of the parties as to the evil sought to be avoided expressed by the covenants as a whole will be determinative.
Here, the restrictive covenant does not define the terms "around or near the boundaries of the lands." Therefore, the language "around or near" must be construed in conjunction with the language of the entire covenant and the intent of the parties. See Eastpointe Property Owners' Ass'n v. Cohen, 505 So.2d 518 (Fla. 4th DCA 1987). To hold that the structure does not violate the restrictive covenant because it is not within a few feet of the Monacos' property line, even though that structure substantially interferes with the Monacos' visibility of the golf course, would contradict the intent of the covenant. We conclude that the restrictive covenant, read in its entirety, prohibited the building of the structure in this location. Accordingly, the final judgment is affirmed.
Affirmed.
SALCINES, J., Concurs.
ALTENBERND, A.C.J., Dissents with opinion.
ALTENBERND, Acting Chief Judge, Dissenting.
The structure in question is a combination restroom and lightning shelter. It is *655 comparable to a covered picnic area in a park. It is nicely designed and landscaped. No one suggests that it is a nuisance or that it violates building codes or zoning requirements. Like many residential golf courses, this course appears to be designed with wide fingers that include one outbound fairway and one inbound fairway. This shelter has been built between the fourth green and the fifth tee about 150 feet from the end of a finger. The Monacos' lot is the closest lot to the shelter. The shelter is about 80 feet from their lot line and perhaps 100 feet from the rear portion of their house. The Monacos still have an unobstructed view of the fifth tee. The shelter itself is partially obstructed by the higher tee. The survey in the record indicates that, from the Monacos' backyard, they enjoy approximately a 140° view of the golf course, and this shelter interferes with about 15° of the central portion of the view. Before the shelter was built, shrubbery in this area blocked some of the Monacos' view.
The issue before this court is primarily a legal issue and requires this court to determine whether the shelter violates the language of the covenant. It is well-established that a restrictive covenant that runs with the land is not favored and must be strictly construed. See Ballinger v. Smith, 54 So.2d 433 (Fla.1951). The intent of such a recorded covenant should be derived from the covenant itself and not from parol evidence. See Moore v. Stevens, 90 Fla. 879, 106 So. 901 (Fla.1925). The general rule is that a reasonable, unambiguous restriction will be enforced according to the intent of the parties that negotiated the covenant as expressed by the clear and ordinary meaning of the covenant's terms. If it is necessary to construe a somewhat ambiguous term, the intent of the original parties as expressed by the covenants as a whole will be determinative. See Barrett v. Leiher, 355 So.2d 222 (Fla. 2d DCA 1978) (citing Hagan v. Sabal Palms, Inc., 186 So.2d 302 (Fla. 2d DCA 1966)). Because restrictive covenants running with the land bind future purchasers who do not participate in the negotiating of the terms of the restriction, the expressed intent of the original parties is the controlling factor. See Moore, 106 So. at 904.
The covenant in this case does not restrict the landowner from building anything in an 80-foot restricted setback. It prevents the golf course from building "fences, hedges, or other obstructions" "around or near the boundaries" in order to allow "complete visibility of the golf course and its appurtenances" from "the surrounding lands."
"Appurtenance" is undefined in this covenant, and Imperial Golf Club may not have preserved the issue that a shelter is an appurtenance. I am inclined to believe, however, that it is an appurtenance. An "appurtenance" is "something annexed to another thing more worthy as principal," or "an article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold." Black's Law Dictionary 103 (6th ed.1990). Indeed, Black's explains that an "outhouse, barn or garden" is an appurtenance to a house. Thus, if anything, the restrictive covenant actually protects the Monacos' right to have an unobstructed view of the shelter, as an appurtenance of the golf course.
Even if the shelter is deemed an obstruction, it is only restricted if it is "around or near the boundary." The concept of "around or near" is relative and, thus, inherently ambiguous in the sense that it does not specify an exact distance. A location 80 feet from the United States border may be near that boundary, but a baseball hit 80 feet short of Fenway's green monster is nowhere near a home run. In the context of this golf course and in a restriction aimed foremost at fences and hedges, I do not believe a generic, non-lineal "obstruction" erected in the center third of this finger of the golf course is near any boundary.
*656 I do not know where the majority would draw the line between boundary land and primary golf course in this case. The 80-foot restriction imposed in this case places a substantial percentage of the golf course within the boundary area. The local zoning code has a 50-foot setback requirement for buildings on this land, and I would be willing to agree that fences, hedges, and other small obstructions should not be built in the area where larger structures cannot be erected. Alternatively, it might be reasonable to regard all land in the rough as near a boundary. I simply cannot accept as a strict construction of this covenant an interpretation that prohibits a shelter on the far side of a tee, especially when it blocks the view of only a limited portion of the golf course.
NOTES
[1] The Monacos presented expert testimony that supports the damage award.