DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VICTORVILLE WEST LIMITED PARTNERSHIP,**
Appellant,

v.

**THE INVERRARY ASSOCIATION, INC.,**
a Florida Non-Profit Corporation,
Appellee.

No. 4D16-2266

[August 23, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale Ross, Judge; L.T. Case No. 13-000536 (08).

Matthew P. Leto of Hall, Lamb and Hall, P.A., Miami, for appellant.

Geralyn M. Passaro and Angela M. Swenka of Litchfield Cavo, LLP, Fort Lauderdale, for appellee.

LEVINE, J.

Appellant purchased a golf course with a restrictive covenant and now seeks to cancel the covenant because the golf course has become unprofitable. Appellant contends there has been a substantial change in circumstances such that the covenant's purpose can no longer be carried out and that the covenant is an unlawful restraint on alienation. Additionally, appellant argues that the statute of limitations did not bar its claim. Thus, we are confronted with the issue of whether a property owner may cancel a restrictive covenant when that covenant has become financially onerous. Although we find appellant's claim not to be time-barred, we conclude that the restrictive covenant may not be cancelled because it remains beneficial to the dominant estate holders and does not create an unlawful restraint on alienation.

The Inverrary Golf Course and Clubhouse within the Inverrary community has been encumbered by a restrictive covenant since 1971. This covenant states as follows:

The [Golf Course] shall henceforth be used solely for recreational purposes, including all sports as defined herein, and for the Facilities and amenities appurtenant thereto, such as clubhouses and recreational, maintenance, and storage facilities and equipment. For the purposes of this Declaration, the term "sports" shall be deemed to include, by way of illustration and not in limitation thereof, the following: Golf, tennis, horseback riding, swimming and all such other recreational activities as may be appropriate and in keeping with the overall development of Inverrary. . . .

. . . .

Developer agrees that henceforth, when at any time [the Golf Course] has a roster of Fifteen Hundred (1500) Golf Memberships . . . it will not at any such time offer, sell, or admit to golf membership any persons or families not then bona fide residents of Inverrary.

. . . .

Duration. The foregoing Restrictions shall run with, and be binding upon, the [Golf Course] as an obligation and charge against the same, running with the land for the benefit of the owners of the property . . . for a term of twenty-five (25) years from the date this Declaration is recorded, after which time the said restrictions shall be automatically renewed for successive ten (10) year periods; provided however that at the expiration of the initial term or any renewal thereof, the foregoing restrictions may be amended, modified or terminated by the affirmative vote of the owners of not less than two-thirds (2/3) of the land area . . . .

This covenant is recorded in the Broward County records and is incorporated into the deeds of the surrounding residential properties.

In 2006, Victorville West Limited Partnership purchased the golf course "SUBJECT TO . . . all covenants . . . listed in the Public Records of Broward County, Florida." Since purchasing the golf course, membership, particularly among Inverrary residents, has dropped significantly. As a result, Victorville has suffered financially.

Victorville asked The Inverrary Association, Inc., the local homeowners association, to facilitate a vote of local residents so Victorville could relieve itself of the restrictive covenant. The association refused. When Victorville attempted to hold its own meeting, only one to two percent of residents

2

chose to attend. Members of the community indicated they liked the golf course, even if they did not have a membership, because it provided a tranquil view, prevented overcrowding, and preserved the nature of the community.

Victorville filed suit against the association in 2012, arguing the covenant was an economic hardship and sought to cancel the covenant. Following a non-jury trial, the trial court concluded Victorville's claim was time-barred because the statute of limitations began to run when it purchased the golf course and it did not bring its claim within the five-year statutory limit. The trial court further found that even if the statute of limitations had not run, Victorville was not entitled to vacate the restrictive covenant, stating the covenant remained beneficial to the surrounding community. Victorville appealed.

On appeal, Victorville argues the trial court should have cancelled the restrictive covenant because a substantial change in circumstances prevented the covenant's original purpose from being carried out and the covenant was an unlawful restraint on alienation.

We review the trial court's findings of fact under the clearly erroneous standard of review and its legal conclusions and application of the law to the facts de novo. *See Fito v. Attorney's Title Ins. Fund, Inc.*, 83 So. 3d 755, 757-58 (Fla. 3d DCA 2011).

> [I]n an action to cancel a restrictive covenant the test is whether or not the covenant is valid on the basis that the original intention of the parties can be carried out despite alleged materially changed conditions or, on the other hand, whether the covenant is invalid because changed conditions have frustrated the object of the covenant without fault or neglect on the part of the party who seeks to be relieved from the restrictions.

*Essenson v. Polo Club Assocs.*, 688 So. 2d 981, 984 (Fla. 2d DCA 1997) (citation omitted); *see also AC Assocs. v. First Nat'l Bank of Fla.*, 453 So. 2d 1121, 1127 (Fla. 2d DCA 1984) ("If a restriction on the servient estate was for the benefit of, and is still of substantial value to, the dominant estate, it will be enforced regardless of changed conditions."). A restrictive covenant's purpose is "determined by a fair interpretation of the entire text of the covenant." *Wilson v. Rex Quality Corp.*, 839 So. 2d 928, 930 (Fla. 2d DCA 2003) (citation omitted).

The golf course continues to benefit the "dominant estate[s]," the

surrounding residential properties. Although few Inverrary residents have memberships at the golf course, the golf course preserves the character of the community and provides residents with a pleasant view. These are reasonable objectives of a restrictive covenant. *See Metro. Dade Cty. v. Sunlink Corp.*, 642 So. 2d 551, 555 (Fla. 3d DCA 1992); *Imperial Golf Club, Inc. v. Monaco*, 752 So. 2d 653, 654 (Fla. 2d DCA 2000). Thus, even if the golf course is failing financially, the covenant must be enforced because it remains a "substantial value to" the surrounding residences, the dominant estates. *AC Assocs.*, 453 So. 2d at 1127.

Victorville argues that the covenant anticipates a bilateral relationship where members of the community get memberships in the club and the club provides a recreational facility. Although the covenant prioritizes community members over non-community members, nothing in the covenant shows that its intent is for the golf course to be a profitable enterprise. Victorville's financial hardships do not support cancellation of the covenant because "the law does not permit cancellation of property restrictions for the purpose of accommodating the best or most profitable use of a particular piece of property affected by the restriction." *Essenson*, 688 So. 2d at 983.

Victorville also argues the covenant is perpetual, as getting a two-thirds vote is virtually impossible without the association's assistance. "The rule against restraints on alienation 'has long been recognized as precluding only *unlimited* or *absolute* restraints on alienation.'" *Camino Gardens Ass'n v. McKim*, 612 So. 2d 636, 640 (Fla. 4th DCA 1993) (citation omitted). "When determining the validity of restraints on alienation, courts must measure such restraints in terms of their duration, type of alienation precluded, or the size of the class precluded from taking." *Id.* at 639. The duration of the covenant is significant though not *perpetual* because the covenant may be removed by a two-thirds vote of surrounding homeowners. *See Sunlink Corp.*, 642 So. 2d at 554. Further, there is no restriction on the "type of alienation precluded" or "the size of the class precluded from taking." *See Camino Gardens*, 612 So. 2d at 639. Indeed, no evidence suggested Victorville ever attempted to even market the property. Therefore, the covenant does not create an "*unlimited* or *absolute* restraint[] on alienation." *Id.* at 640 (citation omitted).

The trial court also concluded Victorville filed its claim after the five-year statute of limitations had run because its claim came into existence when it purchased the golf course. *See* § 95.11(2)(b), Fla. Stat. (2013). We find this portion of the trial court's order to be error. The statute of limitations begins to run "when the action 'may be brought.'" *See Harris v. Aberdeen Prop. Owners Ass'n*, 135 So. 3d 365, 368 (Fla. 4th DCA 2014)

(quoting *City of Riviera Beach v. Reed*, 987 So. 2d 168, 170 (Fla. 4th DCA 2008)). For the statute of limitations to have begun to run when Victorville purchased the golf course, a substantial change in circumstances would have had to have taken place before Victorville purchased the property, but no evidence was presented to indicate that such a change had taken place.

In summary, although we conclude the trial court incorrectly found the statute of limitations barred Victorville's claim, we nevertheless affirm because the trial court correctly found the covenant could not be cancelled because it remained a substantial benefit to the surrounding homeowners and was not an unlawful restraint on alienation.

*Affirmed.*

GERBER, C.J., and CONNER, J., concur.

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**

5